IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NO. 1:25-cv-42

| | |
|---|---|
| SHOWHOMES FRANCHISE COMPANY, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>RDNK CAPITAL, LLC,<br>N BY DESIGN, LLC,<br>NANCY W. JONES, and<br>ROBERT G. JONES,<br><br>*Defendants*. | **COMPLAINT** |

Plaintiff Showhomes Franchise Company, LLC f/k/a Showhomes Franchise Corporation ("Showhomes") brings this action for breach of contract against Defendants N By Design, LLC ("N By Design"), RDNK Capital, LLC ("RDNK," and together with N By Design, "Franchisees") Nancy W. Jones ("Nancy Jones"), and Robert G. Jones ("Robert Jones"). Defendants are current and former franchisees of Showhomes and personal guarantors of the Franchisees' obligations under the underlying Franchise Agreements. Defendants are currently breaching the noncompete provisions of their Franchise Agreements. Furthermore, Defendants are in breach of their Franchise Agreements by refusing to pay past due amounts owed to Showhomes. Showhomes seeks injunctive, monetary, and other relief against Defendants and alleges as follows:

## THE PARTIES

1. Plaintiff Showhomes Franchise Company, LLC is a Georgia limited liability company. It is an entity with a legal existence in good standing in its state of incorporation and has the capacity to sue. It is engaged in the business of franchising independent businesspersons to

operate SHOWHOMES® businesses throughout the United States. Showhomes franchisees are licensed to use the SHOWHOMES® trade name, trademarks, and service marks and to operate under the Showhomes System[1], which involves establishment and operation of a business providing services for residential properties, including delivering residential decoration, staging, furnishings, and other products and services to facilitate the sale of properties; and providing services to owners of properties for home makeovers, cosmetic home updating-remodeling, remodeling, decorating, and updating, utilizing, among other things, Showhomes' distinctive signage, proprietary marks, uniform standards, specifications and procedures, and training and assistance.

2. Showhomes was previously known as Showhomes Franchise Corporation.

3. Showhomes' sole members are Showhomes Holdings, Inc, a Delaware corporation with a principal place of business in Nashville, Tennessee, and Realzar Holdings LLC. Realzar Holdings LLC's sole member is Marisa Salas, who is a Florida citizen.

4. RDNK Capital, LLC is also a North Carolina limited liability company with its principal office in Arden, North Carolina. RDNK may be served with process upon its registered agent Robert Jones at it registered office located at 141 Salem Creek Dr., Winston-Salem, North Carolina 27103.

5. Defendant N By Design, LLC is a North Carolina limited liability company with its principal office in Winston-Salem, North Carolina. N By Design may be served with process upon its registered agent Nancy Jones at it registered office located at 141 Salem Creek Dr., Winston-Salem, North Carolina 27103.

---

[1] Capitalized terms not defined herein have the definition set forth in the Franchise Agreements.

6. Upon information and belief, Defendants Nancy Jones and Robert Jones are the sole members of N By Design.

7. Upon information and belief, Defendants Nancy Jones and Robert Jones are the sole members of RDNK.

8. Nancy Jones and Robert Jones are citizens and residents of Forsyth County, North Carolina, and can be served with process at their residence, 4166 Lytchfield Court, Winston-Salem, North Carolina 27104.

9. As discussed in further detail below, Nancy Jones is the Managing Principal for both N By Design and RDNK. Nancy Jones and/or Robert Jones are the managing members of N By Design and RDNK.

## JURISDICTION AND VENUE

10. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs, and no Defendant shares a state of citizenship with any Plaintiff.

11. This Court has *in personam* jurisdiction over Defendants because they conduct business in North Carolina and the events giving rise to Showhomes' claims occurred in North Carolina. *In personam* jurisdiction also exists pursuant to the parties' agreement in Section 20.8 of the RDNK Franchise Agreement.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and the venue provision contained in Section 20.8 of the RDNK Franchise Agreement.

## BACKGROUND FACTS

### The Parties' Rights and Obligations Under the Franchise Agreements

13. Showhomes is the franchisor of the SHOWHOMES® Home Services system.

14. Showhomes and its predecessor have been offering franchises for decades, sharing with franchisees the know-how, information, and techniques, that Showhomes has acquired over time, to operate a SHOWHOMES® business.

15. N By Design previously operated a SHOWHOMES® franchise in the territory of Winston-Salem, North Carolina (the "Winston-Salem Franchise"), pursuant to a Franchise Agreement with Showhomes dated July 31, 2014 (the "N By Design Franchise Agreement"). A true and correct copy of the N By Design Franchise Agreement is attached hereto and incorporated herein as **Exhibit A**. The N By Design Franchise Agreement's term expired on July 31, 2024. (Ex. A § 4.1.)

16. Nancy Jones and Robert Jones personally guaranteed N By Design's obligations under the N By Design Franchise Agreement. (Ex. A, Attachment G (Guaranty and Assumption Agreement).)

17. RDNK operates a SHOWHOMES® franchise in the territory of Western North Carolina (the "Western North Carolina Franchise"), pursuant to a Franchise Agreement with Showhomes dated September 15, 2020 (the "RDNK Franchise Agreement"). A true and correct copy of the RDNK Franchise Agreement is attached hereto and incorporated herein as **Exhibit B**. The N By Design Franchise Agreement and the RDNK Franchise Agreement are collectively referred to as the "Franchise Agreements." The RDNK Franchise Agreement's term expires on September 15, 2030. (Ex. B § 4.1.)

18. Nancy Jones and Robert Jones personally guaranteed RDNK's obligations under the RDNK Franchise Agreement. (Ex. B, Attachment G (Guaranty and Assumption Agreement).)

19. During its franchise term, N By Design was authorized to operate a SHOWHOMES® business, pursuant to a license to use Showhomes' trademarks, tradename, and

business system under the terms of the N By Design Franchise Agreement. When that term expired on July 31, 2024, N By Design was no longer authorized to use Showhomes' trademarks, tradename, and business system.

20. RDNK Capital is authorized to operate a SHOWHOMES® business, pursuant to a license to use Showhomes' trademarks, tradename, and business system under the terms of the RDNK Franchise Agreement.

21. The Showhomes system includes, among other things, the right to operate a home services business within a specified territory that provides services such as home staging, makeovers, restyling, updating, remodeling, and decorating—to facilitate the sale of properties and to provide services to owners of properties that are not for sale—using Showhomes' marks and its confidential information, which includes, without limitation, Showhomes' proprietary software; business plans; advertising plans and programs; manuals; and lists of customers, national accounts, and properties.

22. In signing the Franchise Agreements, Defendants acknowledged "the importance of maintaining uniformity among all of the Franchised Businesses and agree[d] to comply with all [Showhomes] standards and specifications relating to the operation of the Franchised Business." (Franchise Agreements § 8.1.)

23. Defendants further acknowledged that, as franchisees, they would:

> receive valuable training, trade secrets, and Confidential Information pursuant to th[e Franchise] Agreement, including, without limitation, information regarding the operational, sales, promotional and marketing methods, and techniques of [Showhomes] and the System, which are beyond the present skills and experience of Franchisee and the Principals.

(Franchise Agreements § 11.3.1.)

24. Defendants further acknowledged:

> that such specialized training, trade secrets and Confidential Information, provide a competitive advantage and will be valuable to them in the development and operation of the Franchised Business and that gaining access to such specialized training, trade secrets, and Confidential Information is a primary reason why they are entering into th[e Franchise] Agreement.

(Franchise Agreements § 11.3.1.)

25. Accordingly, Defendants agreed that, during the term of their Franchise Agreements, in consideration for the specialized training, trade secrets, and Confidential Information that they would receive as franchisees, they would not (either directly or indirectly, or on behalf of or in conjunction with any other person or entity), among other things, own, maintain, operate, engage in, have any financial or beneficial interest in, advise, or assist any business offering services similar to Services offered by their Franchised Business. (Franchise Agreements § 11.3.1.2.)

26. In addition, Defendants agreed that upon the expiration of their Franchise Agreements and continuing for a period of two years thereafter, they would not (either directly or indirectly, for themselves or on behalf of or in conjunction with any other person or entity), among other things, divert, or attempt to divert, any business or customer of the Franchised Business to any competitor. (Franchise Agreements §§ 11.3.2.1, 19.8.)

27. Similarly, Defendants agreed that upon the expiration of their Franchise Agreements and continuing for a period of two years thereafter, they would not (either directly or indirectly, for themselves or on behalf of or in conjunction with any other person or entity) own, maintain, operate, engage in, have any financial or beneficial interest in, advise, or assist any business that offers services similar to the Services offered by the Franchised Business and which business is located, among other places, within the Territory or within a twenty-five (25) mile

6

radius of the Territory of Defendants' Franchised Business. (Franchise Agreements §§ 11.3.2.3, 19.8.)

28. Defendants also agreed to treat and maintain Showhomes Confidential Information as secret and confidential in accordance with the Franchise Agreement. (Franchise Agreements § 11.2.1.)

29. That commitment included the obligation not to communicate, divulge or use for the benefit of any other person or entity and, following the expiration of the Franchise Agreement, not to use for their own benefit, any Confidential Information, knowledge, or know-how concerning the methods of operation of a home management business which may be communicated to them or of which they may be apprised in connection with the operation of the Franchised Business under the terms of the Franchise Agreements. (Franchise Agreements §§ 11.2.3, 19.8.)

30. In addition to the foregoing obligations, Defendants agreed to timely pay all payments due and owing to Showhomes. (Franchise Agreements § 5.)

31. Defendants agreed that if they failed to make timely payments to Showhomes they would pay Showhomes late fees, plus interest. (N By Design Franchise Agreement § 5.9; RDNK Franchise Agreement § 5.10.)

32. Defendants agreed to pay Showhomes the reasonable attorneys' fees and costs it is forced to incur to enforce the terms of the Franchise Agreements. (Franchise Agreements §§ 19.5, 19.6.)

33. Section 19 of the Franchise Agreements contains other post-expiration obligations, including, but not limited to, the obligation to immediately cease operating and de-identify the Franchised Business; immediately and permanently cease using the mark "Showhomes" and all

other marks in connection with the Franchised Business; promptly pay all sums owing to Showhomes; return all Manuals, records, files, instructions, correspondence, any Software licensed by [Showhomes], all materials related to operating the Franchised Business, including, without limitation, agreements, invoices, lists of all Properties, Home Managers, customers, and National Accounts; assign to Showhomes all rights to the telephone number of the Franchised Business and execute all forms and documents required for such transfer; and immediately comply with the covenants contained in Section 11 of the Franchise Agreement.

34. As Managing Principal of the franchisee entities, Defendant Nancy Jones has "ultimate responsibility for the management of the Franchised Business." (Franchise Agreements § 1.) And she agreed to be individually, jointly, and severally, bound by all obligations of the franchisee entities. (Franchise Agreements § 7.4.3.)

35. Furthermore, Nancy Jones and Defendant Robert Jones personally guaranteed both N By Design's and RDNK's obligations under their Franchise Agreements, including their obligation to pay Showhomes all money due. Through the guarantee, the Nancy and Robert Jones also both made all of the covenants, representations, warranties and agreements set forth in specified sections of the Franchise Agreements, including the confidentiality covenants and covenants against competition contained Section 11 of the Franchise Agreements. (Franchise Agreements, Attachment G, Guaranty and Assumption Agreement.)

### Defendants' Breaches Of The Franchise Agreements

36. The N By Design Franchise Agreement for the Winston-Salem Franchise expired on July 31, 2024.

37. Accordingly, on July 23, 2024, Showhomes sent N By Design a notice (the "July 23 Notice") confirming the Franchise Agreement's expiration, effective August 1, 2024, and

reminding N By Design and its principals of their post-expiration obligations under Sections 19 and 11 of the Franchise Agreement. A true and correct copy of the July 23 Notice is attached hereto and incorporated herein as **Exhibit C**.

38. The Notice also reminded the principals of their and RDNK's in-term noncompete covenants under the RDNK Franchise Agreement.

39. Upon expiration of the N By Design Franchise Agreement, Defendants were required to comply with the post-expiration covenants not to compete and other post-expiration obligations set forth in the Franchise Agreements.

40. During a follow-up conversation between Showhomes and Nancy Jones, Nancy Jones indicated that she intended to continue offering services similar to services offered by the former Winston-Salem Franchise, including home updating and interior design services, in the same territory as the former Winston-Salem Franchise, in violation of the post-expiration covenants against competition and confidentiality covenants contained in the N By Design Franchise Agreement and the in-term covenants against competition and confidentiality covenants contained in the RDNK Franchise Agreement.

41. Upon information and belief, Nancy Jones and Robert Jones created a new entity called Envision Interiors NC, LLC on or about July 23, 2024, to operate a competing business in violation of the foregoing Franchise Agreement provisions. Nancy Jones is the Owner Manager and Robert Jones is the General Manager of Envision Interiors NC, LLC. Envision Interiors NC, LLC's principal office and registered office is at the same location as N By Design and RDNK, which is 141 Salem Creek Drive, Winston-Salem, North Carolina 27103. And the competing business continues to use the phone number of N By Design's former Showhomes franchise.

42. Upon information and belief, Nancy and Robert Jones are operating Envision Interiors NC, LLC, which is a competing business, while Defendants are still Showhomes franchisees under the RDNK Franchise Agreement and Defendants continue to have access to Showhomes' System and Confidential Information, all in violation of the Franchise Agreements.

43. Thus, on August 23, 2024, Showhomes sent N By Design a notice of noncompliance with the Franchise Agreement's post-expiration obligations (the "August 23 Notice"). A true and correct copy of the August 23 Notice is attached hereto and incorporated herein as **Exhibit D**. That Notice demanded that N By Design—and relatedly RDNK—immediately comply with their covenants in the Franchise Agreements and all post-expiration obligations, and pay all past due amounts to Showhomes.

44. To date, N By Design owes Showhomes $25,200.54 in past due amounts under its Franchise Agreement, and RDNK owes $22,112.05 in past due amounts under its Franchise Agreement.

45. Defendants agreed in the Franchise Agreements that they "shall not be entitled to withhold payments due [Showhomes] under this Agreement on any grounds." (Franchise Agreements §§ 5.8, 5.9.)

46. Further efforts by Showhomes to secure Defendants' compliance with their Franchise Agreements have proven unsuccessful.

47. Defendants have failed to remedy their defaults, failed to cease operating a competing business, and otherwise failed to come into compliance with the Franchise Agreements.

48. Pursuant to the Franchise Agreements, Defendants agreed that in the event of an actual or threatened breach of any provision of the Franchise Agreements, Showhomes would be irreparably injured and without an adequate remedy at law, and it shall be entitled to a temporary

and/or permanent injunction, without the necessity of showing actual or threatened harm and without being required to furnish a bond or other security. (Franchise Agreements § 20.9, Attachment D § 3.2, Attachment E § 8.)

49. Pursuant to the Franchise Agreements, Defendants agreed that the time limitations set forth in section 11.3 "shall be tolled during any period of noncompliance." (Franchise Agreements § 11.3.3.)

50. Pursuant to the Franchise Agreements, Defendants further agreed that damages for breach of the Franchise Agreements may be difficult to ascertain, and therefore, Defendants agreed they would be liable for liquidated damages if they breached the non-competition or confidentiality provisions of the Franchise Agreements. (N By Design Franchise Agreement § 18.7; RDNK Franchise Agreement § 18.6.) Specifically, Defendants agreed they would be liable for $50,000 in liquidated damages for breach of the confidentiality provisions, and a calculated amount of royalties and Ad Fund Contributions multiplied by twenty-four (24) for breach of the non-competition provisions. (*Id.*)

## COUNT I
### Breach of Contract

51. The allegations of the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

52. The Franchise Agreements, including, without limitation, the Guaranty and Assumption Agreements contained therein, are lawful and binding contracts.

53. The conduct described in this Complaint constitutes material breaches of the contractual provisions of the Franchise Agreements cited herein.

54. Defendants' continued operation of and/or involvement in, directly or indirectly, a competing business in the Winston-Salem area constitutes material breaches of their post-

expiration and in-term obligations under the Franchise Agreements, including, without limitation, the covenants against competition and confidentiality provisions of the Franchise Agreements cited herein.

55.     Defendants' failure to pay past due money owed to Showhomes constitutes material breaches of the contractual provisions of the Franchise Agreements cited herein.

56.     Showhomes has no adequate remedy at law to protect its substantial business and property rights at issue in this lawsuit.  The damages from Defendants' failure to comply with their obligations under the Franchise Agreements are considerable and continuing.

57.     As a direct and proximate result of Defendants' actions, Showhomes has suffered and is continuing to suffer irreparable injury and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined, including, without limitation, past due amounts, penalties, costs, interest, attorneys' fees, and liquidated damages, which in any case exceed $75,000.

58.     Showhomes is entitled to preliminary and permanent injunctive relief enforcing all post-expiration obligations of the Franchise Agreements, preventing Defendants from using Showhomes Confidential Information and know-how, and preventing Defendants from operating a competing business in violation of the Franchise Agreements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A.      Enter an order declaring that Defendants' conduct materially breached the terms of the Franchise Agreements;

B.      Enter an order for preliminary and permanent injunction directing Defendants, and all those acting by, through, or in concert with them, to comply with all applicable post-expiration

obligations as provided in the Franchise Agreements, including but not limited to promptly paying all sums owed to Showhomes, complying with the post-expiration noncompete and confidentiality covenants, ceasing operation of a competing business, and assigning to Plaintiff all rights to the telephone number of the Winston-Salem Franchise and executing all forms and documents required for such transfer;

C. Enter an order for preliminary and permanent injunction directing Defendants, and all those acting by, through, or in concert with them, to comply with all applicable in-term covenants against competition and confidentiality covenants;

D. Enter judgment in favor of Plaintiff Showhomes and against Defendants jointly and severally for the damages Showhomes has suffered, including all past due amounts, contractual interest and late penalties, liquidated damages, and pre-judgment and post-judgment interest as allowed by law;

E. Award Plaintiff its costs and attorneys' fees incurred in connection with this action, pursuant to the Franchise Agreements; and

F. Award Plaintiff such other relief in its favor as this Court may deem just and proper.

Respectfully submitted,

Dated: February 7, 2025

*/s/ Nicholas H. Lee*
Nicholas H. Lee, N.C. Bar No. 47885
Parker Poe Adams & Bernstein LLP
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Nicholaslee@Parkerpoe.com
Telephone: (704) 372-9000
Facsimile: (704) 334-4706

Justin L. Sallis (*pro hac vice* motion forthcoming)
LATHROP GPM LLP
The Watergate

600 New Hampshire Avenue, N.W. – Suite 700
Washington, D.C. 20037
Telephone: (202) 295-2200
Facsimile: (202) 295-2250
Justin.Sallis@Lathropgpm.com

*Attorneys for Plaintiff*